UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KATHRYN KEYS, PLAINTIFF

v. CIVIL ACTION NO. 3:09-CV-834-S

HUMANA, INC., DEFENDANT

**MEMORANDUM OPINION**

Kathryn Keys brings this class-action lawsuit against her former employer, Humana, Inc., alleging that the company discriminated against her on account of race in violation of the Civil Rights Act of 1991, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (The court accordingly has jurisdiction pursuant to 28 U.S.C. § 1331.) Humana has asked that the complaint be dismissed for failure to state a claim on which relief can be granted, both as to Keys herself and as to the class she seeks to represent. For the reasons set forth below, Humana's motion will be granted, and the complaint dismissed in full.

The basic facts of the case (drawn from the assumed-true allegations of the First Amended Class Action Complaint) are as follows: Keys, an African-American woman, interviewed for a position titled "Director" sometime in early 2005, and was offered that position on the day of the interview. Her offer letter (which she received some time thereafter), however, reflected that she would be called a "Consultant Leader." She accepted the offer anyway, began work in March 2005, and eventually succeeded in having her title changed to what she had been orally promised. She initially reported to a Vice President and supervised a dozen employees. In February 2006, a reorganization resulted in Keys' position being changed to "Individual Contributor." In this role she no longer supervised her dozen employees, and she reported to a Director (the role she had

previously held) rather than to a Vice President. This change did not apparently affect her salary or benefits; nor does the complaint term this action a demotion or allege that her duties changed with the exception of her place in the corporate hierarchy. No other Directors (all of whom were allegedly white) suffered this change in title.

In August 2006, Keys was placed on a performance improvement plan, despite the fact that she had met her performance expectations. Around the same time, Humana placed ten to twelve African-American employees of similar rank in performance improvement plans, forced them to resign, or terminated them. Humana took no such action against white employees. Keys filed a complaint with Humana's Associate Relations Department, and the firm undertook an investigation into her allegations of discrimination. Several months later (during which time Keys had taken leave pursuant to the Family and Medical Leave Act), Humana reported to her that its investigation had concluded that her complaints were unfounded. Keys remained in her Individual Contributor position, under the performance improvement plan, and she eventually received a favorable written assessment in October 2007.

Keys' team reorganized again in January 2008, and a new managerial level was added above her position. The result was that she now reported to a lower level director, a position two rungs down the ladder from the one into which Humana had originally hired her. There is again no allegation that her duties, compensation, or benefits changed significantly.

Humana terminated Keys' employment on June 20, 2008, citing the pre-October-2007 performance improvement plan but ignoring the favorable written review. (Keys alleges that the written review had in fact been deleted from Humana's records.) No white employees were terminated at the same time, and Keys alleges that Humana used the performance improvement plan

as a pretext for what was in fact a racially motivated action. Keys filed a complaint with the Equal Employment Opportunity Commission, received a Right to Sue letter, and proceeded to file this case.

A complaint "only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (*quoting Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). This raises the bar from where *Conley v. Gibson*, 355 U.S. 41 (1957) had left it: Whereas under *Conley* a court was to dismiss a facially well-pleaded complaint only if its contents were so outlandish as to be utterly incapable of proof, *Iqbal* (along with its predecessor, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) advises us to toss out a case unless the allegations meet some minimum standard of plausibility. *Courie*, 577 U.S. at 629-30. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. While we must take the complaint's factual allegations as true in making this assessment, we need not accept the truth of legal conclusions or draw unwarranted factual inferences. *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

Although Keys invokes both § 1981 and Title VII, the two causes of action are identical in the necessary elements and burdens of proof. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 512 (6th Cir. 2009); *Johnson v. University of Cincinnati*, 215 F.3d 561, 573 n.5 (6th Cir. 2000). Either claim requires that the plaintiff allege and prove four elements: (1) that she is a member of a protected class; (2) that she was qualified for the job; (3) that she suffered an adverse employment action; and (4) that she was replaced by a person outside the protected class or was treated differently than similarly situated non-protected employees. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391

(6th Cir. 2008); *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). Humana does not challenge either of the first two prongs at this juncture.

The complaint does not specify which of Humana's actions were adverse (the above discussion has omitted a number of incidents that do not plausibly qualify), but her response brief identifies three. First, she says that the changes in her position—being retitled Individual Contributor and having a new layer of management placed above her in the hierarchy—constituted a demotion. Second, she argues that being placed on the performance improvement plan also constituted an adverse action because it eventually resulted in her termination. Finally, in Keys' view the termination itself was racially motivated. The third of these is obviously an adverse action; Humana questions whether the first two qualify. As defined by the Sixth Circuit, the term means a "materially adverse change in the terms of . . . employment." *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885 (6th Cir. 1996).

Humana argues that Keys' change in position was not a "materially adverse change." The court disagrees. While "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims," *id.*, and "must be more disruptive than a mere inconvenience or an alteration of job responsibilities," *Ford v. GMC*, 305 F.3d 545, 553 (6th Cir. 2002), the Sixth Circuit has also recognized that a "less distinguished title" or "significantly diminished material responsibilities" can constitute a materially adverse change. *Id.* The plaintiff here has alleged a title change that can plausibly be seen as having diminished the prestige of her position. This conclusion is bolstered by the allegations that following the initial reorganization she reported to a person holding her old rank, and that following the second reorganization she reported to someone even lower in the chain of command. In addition, it is

plausible to think that Keys' responsibilities were materially diminished by the removal of her supervisory authority. Accordingly the court concludes that moving Keys from a Director position to an Independent Contributor position can plausibly be regarded as a materially adverse change for purposes of this motion to dismiss.

We next address whether placing Keys on a performance improvement plan was an adverse employment action. It is clear that "a negative performance evaluation does not constitute an adverse employment action unless the evaluation has an adverse impact on an employee's wages or salary." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 402 (6th Cir. 2008) (*quoting Tuttle v. Metropolitan Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007)). So to base a discrimination claim on a performance evaluation (of which the improvement plan was a species), "the plaintiff must point to a tangible employment action that she alleges she suffered, or is in jeopardy of suffering, because of the downgraded evaluation." *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 789 (6th Cir. 2000). Keys alleges—with support from the notice of her termination—that the performance evaluation eventually resulted in the loss of her job, an obviously tangible employment action. This allegation is sufficient to make out a separate adverse action that could plausibly form the basis for recovery against Humana.[1]

Having determined for present purposes the existence of the first three elements of her prima facie case with regard to each of the actions on which the complaint is based, we consider the fourth element. To reiterate, *Iqbal* requires the plaintiff to "plead[] factual content that allows the court to

---

[1] It is important to note here that the performance evaluation and the termination are separate but interrelated bases for Keys' lawsuit. It could be the case that the evaluation was racially motivated and caused the termination. Or it could be the case that Keys was placed on the performance improvement program for permissible reasons but was eventually fired because of her race (with the reference to the improvement plan serving as a pretextual cover). Or racism may have pervaded the whole sequence of events. Any of these three possibilities is superficially plausible.

draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S.Ct. at 1949. In addition to the existence of differential treatment, both adjectives modifying "employees" (i.e. "similarly-situated" and "non-protected") are legal conclusions that must be supported by well-pled facts. Keys has failed to do so with regard to the requirement that the coworkers who were allegedly treated differently were in fact similarly situated to her. None of the three pertinent paragraphs (Am. Compl. ¶¶ 16, 17, 21) contain any facts suggesting that the white employees to whom Keys would like the court to compare her were performing similar tasks to the same standards as she. Productivity and competence being relevant factors in making employment decisions, the absence of any such allegations from the complaint prevents the court from inferring that the employees who were not terminated were similarly situated to the plaintiff. Accordingly she has not adequately stated a cause of action under *Iqbal*. *Cf. Fletcher v. Philip Morris USA Inc.*, No. 3:09-CV-284-HEH, 2009 WL 2067807, at *6-7 (E.D. Va. July 14, 2009) (dismissing under *Iqbal* an employment discrimination claim lacking "factual allegations demonstrating that similarly situated employees of a different race or gender received more favorable treatment than Plaintiff"). These complaint must therefore be dismissed.

In addition to her individual claims, Keys' Amended Complaint asserts a class action under Rule 23. But regardless of whether a class of persons exists fitting the proposed class definition (in essence, African-American Humana employees who have been treated differently than similarly situated white Humana employees), as explained above the plaintiff's allegations fall short of permitting an inference that she meets the definition herself. Having failed to allege that she is a

draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S.Ct. at 1949. In addition to the existence of differential treatment, both adjectives modifying "employees" (i.e. "similarly-situated" and "non-protected") are legal conclusions that must be supported by well-pled facts. Keys has failed to do so with regard to the requirement that the coworkers who were allegedly treated differently were in fact similarly situated to her. None of the three pertinent paragraphs (Am. Compl. ¶¶ 16, 17, 21) contain any facts suggesting that the white employees to whom Keys would like the court to compare her were performing similar tasks to the same standards as she. Productivity and competence being relevant factors in making employment decisions, the absence of any such allegations from the complaint prevents the court from inferring that the employees who were not terminated were similarly situated to the plaintiff. Accordingly she has not adequately stated a cause of action under *Iqbal*. *Cf. Fletcher v. Philip Morris USA Inc.*, No. 3:09-CV-284-HEH, 2009 WL 2067807, at *6-7 (E.D. Va. July 14, 2009) (dismissing under *Iqbal* an employment discrimination claim lacking "factual allegations demonstrating that similarly situated employees of a different race or gender received more favorable treatment than Plaintiff"). These complaint must therefore be dismissed.

In addition to her individual claims, Keys' Amended Complaint asserts a class action under Rule 23. But regardless of whether a class of persons exists fitting the proposed class definition (in essence, African-American Humana employees who have been treated differently than similarly situated white Humana employees), as explained above the plaintiff's allegations fall short of permitting an inference that she meets the definition herself. Having failed to allege that she is a

member of the class, Keys does not meet Rule 23(a)'s prerequisites for representing it. Accordingly the complaint will be dismissed in its entirety by separate order.