UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KATHRYN KEYS                                                          PLAINTIFF

v.                                              CIVIL ACTION NO. 3:09-CV-00834-CRS

HUMANA, INC.                                                         DEFENDANT

## MEMORANDUM OPINION

This case is before the court on motions of the defendant, Humana, Inc. ("Humana"), to

strike or, in the alternative, to partially dismiss Plaintiff Kathryn Keys' ("Keys") Second

Amended Complaint (DN 56). For the reasons set forth below, the Court will deny the motion to

strike but will grant the motion to partially dismiss.

## BACKGROUND

For the purpose of resolving Humana's motions, the Court accepts the following facts as

undisputed. In March 2005, Keys was hired by Humana to work in its Louisville office.

Although she had initially been offered a position as a "Director," there was an error in her

paperwork that resulted in her being hired instead as a "Consultant Leader." After a few months,

Keys was able to correct this error and had her title changed to "Director." In that capacity, Keys

supervised approximately twelve employees and reported to Humana's Vice President.

As an African-American woman, Keys claims that she was discriminated against

throughout her employment at Humana. According to Keys, the following events constitute

evidence of Humana's discrimination against her as well as other African-American and female

employees:

> 1. In June 2005, Keys was assigned to lead a management team meeting. During the
> meeting, Keys was "verbally attacked" by her coworker Gracie Baldwin who screamed

"Why are you here?" and "engaged in other disrespectful and disruptive behavior." Keys reported this incident to her supervisor but no action was taken. (Second Am. Compl., DN 44, at ¶ 11).

2. During a conference call in September 2005, Keys briefly excused herself to speak with her supervisor. While Keys was out of the room, her coworker Wadida Murib-Holmes ("Holmes") made negative comments about Keys. Keys reported this incident to her supervisor but no action was taken. (Second Am. Compl. at ¶ 12).

3. In October 2005, James Thomas was hired by Humana and took over Humana's national accounts, which were previously managed by Keys. (Second Am. Compl. at ¶ 13).

4. During a meeting in October 2005, Humana's Vice President of Sales for National Accounts Patrick O'Bryan ("O'Bryan") interrupted Keys while she was introducing herself and discussing her background. After this incident, O'Bryan did not invite Keys to future meetings. (Second Am. Compl. at ¶ 13).

5. During a conference call in November 2005, Holmes asked Keys a question, which Keys had to ask Holmes to repeat. Holmes insulted and humiliated Keys "by yelling at her and asking if she was taking notes." Later in the conference call, O'Bryan "made a malicious and humiliating comment" to Keys by "asking her if she was taking 'copious' notes." (Second Am. Compl. at ¶ 14).

6. During a December 2005 meeting, "in an effort to publicly criticize… Keys' performance," Holmes complained to Chief Operation Officer Jim Murray that six national accounts (for which Keys was responsible) were still being processed. (Second Am. Compl. at ¶ 15).

7. In February 2006, Keys' title was changed from "Director" to "Individual Contributor" as part of a personnel reorganization within Humana. Although the title change did not affect Keys' compensation or benefits, she no longer supervised any employees and was thereafter required to report to a Director, rather than the Vice President. No other Caucasian Director had their title changed to Individual Contributor. (Second Am. Compl. at ¶ 16).

8. As an Individual Contributor, Keys was assigned to work under Director William Baldwin, who "immediately began to treat… Keys in a discriminatory manner." (Second Am. Compl. at ¶ 16).

9. In August 2006, Keys was placed on a performance improvement plan "despite the fact that she met her performance expectations." While "[s]imilarly situated Caucasian employees… were not placed on performance improvement plants, … "ten to twelve African American [sic] … employees were placed on performance [improvement] plans…" (Second Am. Compl. at ¶ 17).

10. In October 2006, Keys filed a complaint with the Associate Relations Department (the "Department") "alleging that she was not being treated fairly due to her race and/or gender." After an investigation, the Department concluded that Keys' allegations were unfounded. Nevertheless, Keys chose to continue working in her existing department. (Second Am. Compl. at ¶¶ 18–19).

11. In January 2008, Keys was assigned to a different position which required her to report to Director Jerry Brewer ("Brewer"). Brewer "was evasive as to what [Keys'] role would be" in her new position and "made it known that he believed that… Keys was being overcompensated." (Second Am. Compl. at ¶ 20).

12. After she was assigned to work under Brewer, coworker Melissa Guillory ("Guillory") "constantly berated" Keys. Although "[a] few of the attacks occurred in Brewer's presence," no action was taken to address Guillory's behavior. (Second Am. Compl. at ¶ 20).

13. On June 20, 2008, Keys was issued a notice of termination by Brewer. While the notice of termination referenced her placement on a performance improvement plan, it omitted the fact that Keys had received a favorable interim performance appraisal in October 2007. According to Keys, this omission occurred because the favorable appraisal had been deleted from Humana's records. (Second Am. Compl. at ¶ 21).

14. Between 2004 and 2008, several other African-American employees were terminated or forced to resign under circumstances similar to those surrounding Keys' termination. (Second Am. Compl. at ¶ 22).

Following her termination, Keys filed an Equal Employment Opportunity Complaint with the Equal Employment Opportunity Commission (the "EEOC") alleging discrimination based on her race and sex. After dismissing her complaint, the EEOC issued Keys a right-to-sue letter. On October 15, 2009, Keys filed the present action in this Court. On December 21, 2009, Keys filed her First Amended Complaint, (DN 10), which Humana subsequently moved to dismiss, (DN 11). The Court granted Humana's motion to dismiss on July 26, 2010, (DN 17), but that order was subsequently reversed by the Sixth Circuit on July 2, 2012, (DN 26). Following remand, Keys indicated during a status conference with Judge Whalin that she wished to file a second amended complaint. Accordingly, Judge Whalin entered an order stating that Keys would be permitted to file an amended complaint on or before November 15, 2012. (DN 36).

On November 21, 2012, Keys filed her Second Amended Complaint ("Complaint"). (DN 44). Because Keys had failed to move for leave prior to doing so, Humana argued that Keys should be required to file a motion for leave to amend. (DN 47). After considering the issue, Judge Whalin decided to retain Keys' Complaint without requiring her to file for leave to amend.

(DN 49). In response, Humana filed the present motion to strike or, in the alternative, to partially

dismiss Keys' Complaint. (DN 56). After considering the parties' briefs and being otherwise

sufficiently advised, the Court will now address Humana's motions.

**STANDARD**

**i. Motion to Strike**

Because Keys failed to move for leave to amend prior to filing her Complaint, the Court

will analyze Humana's motion to strike as a motion for leave to amend filed by Keys. Thus,

Keys will bear the burden of persuading the Court that her amendments were proper.

Fed. R. Civ. P. 15(a) provides that leave to amend pleadings should be "freely give[n]...

when justice so requires." Fed. R. Civ. P. 15(a)(2). Generally, a plaintiff's motion for leave to

amend its complaint should be granted absent "undue delay, bad faith or dilatory motive on the

part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue… of the amendment, [or] futility of

amendment…" *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, "[d]elay by itself is not

sufficient reason to deny a motion to amend." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458

(6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)).

**ii. Motion to Dismiss**

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine

whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell

Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the complaint

need not contain "detailed factual allegations," "a plaintiff's obligation to provide the grounds of

his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation

marks and alteration omitted).

## DISCUSSION

**i.      Motion to Strike**

Humana argues that Keys' Complaint should be stricken because 1) Keys failed to

include the claims asserted therein in her first two complaints; and 2) Humana would be unduly

prejudiced by having to prepare a defense to Keys' newly asserted claims at this stage of the

litigation. In an order dated December 12, 2012, Judge Whalin addressed these arguments and

concluded that they failed to justify Humana's motion to strike. (Order, DN 49, at 1–2). The

Court finds Judge Whalin's reasoning persuasive and therefore concludes, as he did, that Keys'

Complaint should not be stricken.

**ii. Motion to Dismiss**

Humana has moved to dismiss the following claims pursuant to Fed. R. Civ. P. 12(b)(6):

1) Keys' hostile work environment claim; 2) Keys' discriminatory hiring and compensation

claims; and 3) Keys' class claims based on hostile work environment and discriminatory hiring

and compensation.[1] For the reasons set forth below, the Court concludes that these claims fail to

state a claim for which relief can be granted and therefore must be dismissed pursuant to Rule

12(b)(6).

**a.   Hostile Work Environment Claim**

---

[1] Initially, Humana also moved for dismissal of Keys' "willful disregard for diversity and employment opportunity" claim. However, in her response brief, Keys clarifies that she is not pursuing a separate claim based on "willful disregard for diversity and employment opportunity." (Memo. in Opp'n to Def.'s Mot. to Strike, DN 60, at 3 n. 2).

Humana argues that Keys' hostile work environment claim should be dismissed because: 1) Keys did not exhaust her administrative remedies; and 2) Keys has failed to state a plausible claim for relief as required by *Twombly* and *Iqbal*. Because the Court concludes that Keys' hostile work environment claim is not plausible within the meaning of *Twombly* and *Iqbal*, the Court will not address Humana's argument that Keys did not exhaust her administrative remedies.

A hostile work environment exists if "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment…." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). In order to establish a *prima facie* case of hostile work environment based on either race or sex, Keys must establish the following five elements: 1) she was a member of a protected class; 2) she was subjected to unwelcomed racial or sexual harassment; 3) the harassment was based on race or sex; 4) the harassment had the effect of unreasonably interfering with her work performance by creating an intimidating, hostile, or offensive work environment; and 5) the existence of employer liability. *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999) (citing *Risinger v. Ohio Bureau of Workers' Compensation*, 883 F.2d 475, 484 (6th Cir. 1990)).

"In determining whether the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment…, it is well-established that the court must consider the totality of circumstances." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999) (quoting *Harris*, 510 U.S. at 23). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment… is beyond Title VII's purview. Likewise, if the victim does not subjectively perceive the environment to be abusive, the conduct has not

actually altered the conditions of the victim's employment, and there is no Title VII violation."

*Harris*, 510 U.S. at 21–22. Thus, the hostile-work-environment inquiry has both objective and

subjective components, requiring that courts determine: "(1) whether a reasonable person would

find the environment objectively hostile, and (2) whether the plaintiff subjectively found the

conduct 'severe or pervasive.'" *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 273

(6th Cir. 2009) (quoting *Williams v. General Motors*, 187 F.3d 553, 568 (6th Cir. 1999)).

Although Keys is correct that she does not have to "to plead a *prima facie* case" in order

to survive dismissal, (Resp. to Def.'s Mot. to Dismiss, DN, at), *Twombly* and *Iqbal* require that

she produce "sufficient factual content from which a court, informed by its judicial experience

and common sense, could draw the reasonable inference" that her work environment was both

*objectively* and *subjectively* hostile due to sexually or racially-charged harassment. *See Keys v.*

*Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (internal quotation marks omitted). Because

Keys has failed to allege facts sufficient to permit such an inference," the Court concludes that

her hostile work environment claim fails to satisfy the standard of plausibility set forth in

*Twombly* and *Iqbal*. For this reason, the Court will grant Humana's motion to dismiss Keys'

hostile work environment claim.

Keys' Complaint describes the following events that are relevant to her hostile work

environment claim:

> 1. During a meeting in June 2005, coworker Gracie Baldwin ("Baldwin") screamed at
> Keys "Why are you here?" and engaged in other "disrespectful and disruptive behavior."
> (Second Am. Compl. at ¶ 11).
>
> 2. While Keys was absent from a meeting in September 2005, coworker Wadida
> Murib-Holmes ("Holmes") "began making negative comments about Ms. Keys." (Second
> Am. Compl. at ¶ 12).

3. During a meeting in October 2005, Vice President of Sales Patrick O'Bryan ("O'Bryan") "abruptly cut [Keys] off" and "did not invite [her] to any future meetings." (Second Am. Compl. at ¶ 13).

4. During a conference call in November 2005, Keys was momentarily distracted and did not hear a question she was asked by Holmes. When Keys asked Holmes to repeat the question, Holmes "insulted and humiliated… Keys by yelling at her and asking if she was taking notes." (Second Am. Compl. at ¶ 14).

5. In another conference call, O'Bryan "made a malicious and humiliating comment to… Keys" by "asking her if she was taking 'copious' notes." (Second Am. Compl. at ¶ 14).

6. During a December 2005 meeting, Murib-Holmes complained to Chief Operation Officer Jim Murray that six national accounts (for which Keys was responsible) were still being processed "in an effort to publicly criticize Ms. Keys' performance." (Second Am. Compl. at ¶ 15).

7. Manager Jerry Brewer "made it known that he believed that… Keys was being overcompensated." (Second Am. Compl. at ¶ 20).

8. Coworker Melissa Guillory "constantly berated" Keys after she moved to a new team in January 2008. (Second Am. Compl. at ¶ 20).[2]

Keys claims that she made her supervisors aware of this conduct, but that no attempt was ever made to address her complaints. (Second Am. Compl. at ¶ 20).

These factual allegations fail to satisfy the subjective and objective components of a hostile work environment claim. To begin with, Keys never alleges that the hostility or harassment she experienced affected her ability to perform her job. Although "a plaintiff need

---

[2] Keys' Second Amended Complaint also contains the following language:

> Humana willingly cultivates a corporate culture in which African American employees are routinely subjected to severe and pervasive harassment, including but not limited to belittling and degrading comments, humiliating employees in front of their peers, intimidation, and such adverse personnel actions described herein, which the employees would not have [been] subjected to but for their race and/or complaints of discrimination.

(Second Am. Compl., DN 44, at ¶ 3.d). Although this language certainly suggests that Humana's African-American employees in general are subjected to a hostile work environment, there is absolutely nothing that speaks to Keys' personal experience. Because Keys must prove that *she* was exposed to a hostile work environment, only those allegations that specifically relate to hostility or harassment experienced by *her* are relevant to determining whether Keys' hostile work environment claim is subject to dismissal. *Leidner v. Napolitano*, No. 07-197-DLB, 2010 WL 5300533, at*12 (E.D. Ky. Nov. 23, 2010) (holding that "comments regarding… females in general…" could not serve as the basis for a hostile work environment claim because "no one ever directed these comments specifically at [the plaintiff]…")

not prove a tangible decline in her work productivity," there must be some evidence "that the harassment made it more difficult to do the job." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 274 (6th Cir. 2009) (quoting *Williams v. General Motors*, 187 F.3d 553, 567 (6th Cir. 1999)). Thus, Keys' failure to plead that her job was rendered more difficult by the presence of hostility or harassment is itself sufficient to warrant dismissal.

Furthermore, even if Keys' job performance had been affected, she has also failed to allege that she subjectively perceived Humana's work environment as severely and pervasively hostile. While Keys states that she found Baldwin's behavior at the June 2005 meeting to be "disrespectful and disruptive," and that she was "insulted and humiliated" by Holmes' conduct during the November 2005 conference call, she never indicates, either expressly or impliedly, that she perceived the hostility of Humana's work environment as being "pervasive." This is true despite the fact that Paragraph 3.d of Keys' Complaint states that "African American employees [at Humana] are routinely subjected to severe and pervasive harassment…" because, at bottom, this statement amounts to nothing more than a legal conclusion, not the type of factual support envisioned by *Twombly* and *Iqbal*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (stating that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"). Without more information speaking to her perception of the pervasiveness of the hostility and harassment she experienced at Humana, Keys cannot possibly satisfy the subjective component of her hostile work environment claim.

For these reasons, Keys has failed to provide sufficient factual content for the Court to infer that Humana's work environment was either objectively or subjectively hostile. Accordingly, the Court concludes that Keys' hostile work environment claim must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

**b. Hiring and Compensation Claims**

Humana argues that Keys' discriminatory hiring and compensation claims should be dismissed because they are barred by the one-year statute of limitations applicable to contract-formation claims brought pursuant to 42 U.S.C. § 1981. Although Keys does not dispute that her claims are properly classified as a contract-formation claim, she argues that such claims are instead subject to the four-year statute of limitations set forth in 28 U.S.C. § 1658. In support of her argument, Keys cites *Rodgers v. Apple South, Inc.*, 35 F. Supp. 2d 974 (W.D. Ky. 1999), a decision from this District holding that all Section 1981 claims are subject to the four-year statute of limitations in Section 1658. However, *Rodgers* has subsequently been overruled by the Sixth Circuit's decision in *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506 (6th Cir. 2003). *Anthony* held that the statute of limitations applicable to Section 1981 claims depends on whether the claim at issue is a "formation" claim or a "post-formation" claim. While post-formation claims are subject to the four-year statute of limitations set forth in 28 U.S.C. § 1658, formation claims are subject to the statute of limitations applicable to personal injury actions in the forum state. *See Anthony*, 339 F.3d at 514; *Johnson v. Howard*, No. 307–CV–156–H, 2007 WL 2772634, at *2 (W.D. Ky. Sept. 20, 2007) ("Because neither § 1981 nor § 1983 provides a statute of limitations, federal courts borrow the forum state's statute of limitations for personal injury actions.")

Thus, in Kentucky, contract-formation claims brought pursuant to Section 1981 are subject to the statute of limitations set forth in KY. REV. STAT. § 431.140(a). Because Keys does not dispute that her discriminatory hiring and compensation claims constitute contract-formation claims, they are time-barred unless they were filed within one year of the date on which it accrued. "[T]he statute of limitations begins to run when the plaintiff knows or has reason to

know of the injury which is the basis of his action…" *See Collard v. Ky. Bd. of Nursing*, 896 F.2d 179, 183 (6th Cir. 1990) (quoting *McCune v. City of Grand Rapids*, 842 F.2d 903, 905 (6th Cir. 1988)). Keys was hired by Humana in March 2005, (Second. Am. Compl. at ¶ 9), but did not file the present action until October 15, 2009. To the extent that Keys' discriminatory hiring and compensation claims are based on circumstances that existed at the time she was hired, (Second. Am. Compl. at ¶ 10), the limitations period for these claims expired in March 2006. Because she did not file this action until October 15, 2009, Keys' discriminatory hiring and compensation claims are clearly time-barred and therefore must be dismissed pursuant to Rule 12(b)(6).

**c. Class-Action Claims**

Humana argues that Keys' class claims for hostile work environment and discriminatory hiring and compensation must be dismissed because, to the extent that she herself cannot assert such claims, she lacks standing to assert them on behalf of a class. It is axiomatic that a proposed class representative must be a member of the class which they seek to represent. *See* Fed. R. Civ. Pro. 23(a) ("One or more *members of a class* may sue or be sued as representative parties…") (emphasis added). Given that the Court has already concluded that Keys cannot herself maintain a claim for hostile work environment or discriminatory hiring and compensation, she cannot represent a class of plaintiffs asserting such claims. Therefore, Keys' class claims based on hostile work environment and discriminatory hiring and compensation will be dismissed along with Keys' personal claims.

A separate order will be entered in accordance with this opinion.

cc: Counsel of Record

Charles R. Simpson III, Senior Judge
United States District Court

October 21, 2013